IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CV-85-RJ

RANDY STEWART,

    Plaintiff/Claimant,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

O R D E R

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-26, -30] pursuant to Fed. R. Civ. P. 12(c). Claimant Randy Stewart ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. Claimant responded to Defendant's motion, [DE-32], and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded to the Commissioner for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB, and SSI on December 3, 2008, alleging disability beginning September 3, 2008. (R. 11, 116–28). Both claims were denied initially and upon reconsideration. (R. 48–58). A hearing before Administrative Law

Judge ("ALJ") Richard Perlowski was held on December 20, 2010, at which Claimant, represented by counsel; a witness; and a vocational expert ("VE") appeared and testified. (R. 21–47, 1951–77). On January 26, 2011, ALJ Perlowski issued a decision denying Claimant's request for benefits. (R. 8–20, 1910–22). The Appeals Council denied Claimant's request for review on July 10, 2012. (R. 1–6, 1978–83). Claimant appealed to the United States District Court for the Eastern District of North Carolina, and on August 22, 2013, United States Magistrate Judge Webb authored a Memorandum and Recommendation finding error in ALJ Perlowski's discussion of Claimant's depression and his credibility. (R. 1872–1902). On September 6, 2013, the United States District Court adopted Judge Webb's Memorandum and Recommendation and remanded the case to the Commissioner. (R. 1866–67). On January 10, 2014, the Appeals Council remanded the case to ALJ Perlowski, noting that in a subsequent application, Claimant was found disabled with an onset date of February 1, 2013. (R. 1905–09). The remaining issue was whether Claimant was disabled from September 3, 2008 to February 1, 2013. *Id.* A second hearing before ALJ Perlowski was held on May 12, 2014. (R. 1844–65). ALJ Perlowski issued a decision again denying Claimant's request for benefits on September 5, 2014. (R. 1923–44). On April 22, 2016, the Appeals Council remanded the claim to a different ALJ. (R. 1945–50). A hearing before ALJ Larry Miller was held on October 18, 2016. (R. 1816–43). On December 9, 2016, ALJ Miller issued a decision denying Claimant's request for benefits. (R. 1789–1815). On January 10, 2018, the Appeals Council denied Claimant's request for review of ALJ Miller's administrative decision. Pl.'s Mem. [DE-27] at 2–3; Def.'s Mem. [DE-31] at 2. Claimant then commenced the instant action, seeking judicial review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under

2

the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

3

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the following errors: (1) the ALJ failed to perform a function-by-function assessment of Claimant's ability to use his left upper extremity, (2) the ALJ failed to consider a medical opinion, (3) the ALJ improperly weighed a medical opinion, and (4) the ALJ's appointment did not comply with the Appointments Clause. Pl.'s Mem. [DE-27] at 9–19.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since September 3, 2008. (R. 1795). Next, the ALJ determined Claimant had the following severe impairments during the period in question: history of an abdominal aortic

4

aneurysm, chronic kidney disease, hypertension, major depressive disorder, generalized anxiety disorder, cognitive disorder, degenerative disc disease, and left carpal tunnel syndrome. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in a mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties with regard to maintaining concentration, persistence, or pace; and no episodes of decompensation. (R. 1796).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a reduced range of sedentary work.[1] (R. 1797–1806). He could frequently perform tasks requiring fingering and handling with the left upper extremity; he could occasionally balance on narrow, slippery, or moving surfaces; he could occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl; he could never climb ladders, ropes, or scaffolds; he could not work at heights or around dangerous machinery; he could only do simple, routine, and repetitive tasks; he could concentrate for two-hour increments with normal rest breaks; he could occasionally deal with coworkers, supervisors, and the public; he was unable to work at a production rate; and he was unable to work at jobs requiring complex decision making, constant change, or dealing with crisis situations. *Id.* In making this assessment, the ALJ found Claimant's statements

---

[1] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about two hours of an eight-hour workday. "Sitting" generally totals about six hours of an eight-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately two hundred unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

5

concerning the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the medical and other evidence. (R. 1799).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as an auto car wash attendant and hand packager. (R. 1806). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant was capable of adjusting to the demands of other employment opportunities that existed in significant numbers in the national economy during the period in question. (R. 1807–08).

## V. DISCUSSION

### A. The ALJ adequately discussed Claimant's Carpal Tunnel Syndrome ("CTS").

Claimant contends that the ALJ erred in failing to perform a function-by-function analysis of his ability to use his left upper extremity when formulating the limitations in the RFC.[2] Pl.'s Mem. [DE-27] at 9–12. The court agrees that the ALJ did not perform a function by function analysis, but the failure did not amount to error requiring remand.

An individual's RFC is the capacity he possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632,

---

[2] This court previously found no error in ALJ Perlowski's discussion of Claimant's CTS. (R. 1897–99). ALJ Perlowski found that Claimant's CTS does not preclude him from performing light work. (R. 15–28). Contrarily, ALJ Miller found that Claimant is limited to sedentary work, so a new issue is presented. Light work involves "gross use of the hands," while sedentary work involves "fine use of the fingers." SSR 83-14, 1983 WL 31254, at *4. ALJ Miller's analysis of Claimant's CTS is necessarily different from ALJ Perlowski's; accordingly, the court reviews ALJ Miller's discussion of Claimant's CTS separately from its previous opinion on ALJ Perlowski's decision.

636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations. 20 C.F.R. § 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5.

The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7. The assessment also must discuss "how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*; *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636).

However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636; *Ladda v. Berryhill*, -- F. App'x --, 2018 WL 5096065 (4th Cir. Oct. 18, 2018); *Monroe v. Colvin*, 826 F.3d 176, 187 (4th Cir. 2016). Rather, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (citation omitted). Therefore, despite an ALJ's failure to conduct the function-by-function analysis, the court must look to the ALJ's RFC discussion to determine whether it otherwise provides a sufficient basis for meaningful review.

Here, the ALJ found that Claimant could frequently perform tasks requiring fingering and handling with the left upper extremity, but he did not perform a function-by-function analysis of

7

Claimant's ability to use his left upper extremity. (R. 1797–1806). Because the ALJ failed to perform a function-by-function analysis, the issue becomes whether there are inadequacies in the ALJ's decision that frustrate meaningful review.

The ALJ summarized Claimant's testimony regarding his left upper extremity. (R. 1799). Claimant said that "he drops items with his left hand, as his left hand will become numb." *Id.* Because of his CTS, Claimant "has trouble making a fist." *Id.* Claimant testified that although "he can lift 10-to-15 pounds with his right arm, [he] can only lift two-to-three pounds with his left arm." *Id.*

The ALJ also discussed Claimant's medical and other evidence regarding his left upper extremity. In October 2009, Claimant reported that after his September 2008 abdominal surgery, he "experienced significant left arm weakness. He also reported numbness and tingling in his left hand, that occur 15 minutes a day, two-to-three times a week." (R. 1801–02). Claimant "reported loss of fine motor skills with the left hand." (R. 1802). He had "a positive carpal tunnel compression test and positive Phalen's test, a positive overhead test, and positive Tinel's test on the left. He had diminished strength in his left deltoid, biceps, wrist extension, triceps, grip, and interossel." *Id.* Claimant was diagnosed with CTS, and in January 2010, he reported that "the wrist splints given for his carpal tunnel syndrome provided significant relief." (R. 1803). In March 2010, Claimant reported that "he had limited range in abduction and flexion of his left arm, for fear of pain. . . . Decreased left hand grasp was also noted." (R. 1801–02).

The ALJ explained his conclusion that Claimant can perform sedentary work and frequent handling and fingering as follows:

> Although the claimant has been assessed with carpal tunnel syndrome of his left upper extremity, he has not reported to the emergency room or any urgent care center complaining of this impairment. He has not received any injections for his

8

> carpal tunnel syndrome, no diagnostic testing has been conducting [sic], and no surgery has been discussed. Further, the claimant reported that the use of a wrist splint was providing significant relief.

(R. 1803). The ALJ thereby offered two rationales for his conclusion. First, Claimant has not received aggressive treatment for his CTS, and second, Claimant's wrist splint provided relief.

Those two rationales do not frustrate meaningful review. *See Mascio*, 780 F.3d at 636. A non-aggressive course of treatment may indicate that an impairment is not debilitating. *See Dunn v. Colvin*, 607 F. App'x 264, 275 (4th Cir. 2015) ("[I]f all that the claimant needs is conservative treatment, it is reasonable for an ALJ to find that the alleged disability is not as bad as the claimant says that it is."); *Richardson v. Colvin*, No. 4:14-CV-125-FL, 2015 WL 5725546, at *6 (E.D.N.C. Aug. 11, 2015) (concluding that conservative treatment lends little support to claims of debilitating symptoms), *adopted by* 2015 WL 5737613 (E.D.N.C. Sept. 30, 2015). Additionally, the ALJ appropriately considered Claimant's treatment—a wrist splint that provided significant relief. *See* 20 C.F.R. §§ 404.1529, 416.929 (providing that ALJs must carefully consider "treatment, other than medication, [claimants] receive or have received for relief of [their] pain or other symptoms" and "any measures [claimants] use or have used to relieve [their] pain").

Claimant argues that the ALJ should have included a limitation in the RFC for his brace. Pl.'s Mem. [DE-27] at 11. However, it is not evident that a wrist splint would affect Claimant's RFC. *See Faircloth v. Astrue*, No. 5:08-CV-455-D, 2009 WL 2216603, at *8 (E.D.N.C. July 20, 2009) (finding no error when the claimant wore wrist splints for CTS but the ALJ did not include a limitation in the RFC); *Taylor v. Astrue*, No. 5:10-CV-444-FL, 2011 WL 2457856, at *8 (E.D.N.C. May 18, 2011) (also finding no error when the claimant wore a wrist splint but the ALJ omitted it from the RFC); *Nuckles v. Astrue*, No. 7:09-CV-13-FL, 2009 WL 3208685, at *9–10 (E.D.N.C. Oct. 5, 2009) (same); *Spencer v. Astrue*, No. 4:09-CV-120-FL, 2010 WL 1957360, at *7–8

(E.D.N.C. Apr. 22, 2010) (same). *Contra Reinhard v. Colvin*, No. 5:12-CV-284-BO, 2013 WL 3990687, at *3 (E.D.N.C. Aug. 2, 2013) (finding error when the ALJ failed to include "the claimant's use of a cane and wrist splints" in the RFC).

The ALJ's discussion of Claimant's CTS does not frustrate meaningful review. The ALJ provided two rationales for his conclusion that Claimant can perform frequent handling and fingering, and the court can trace the ALJ's reasoning. Accordingly, the ALJ did not err in his formulation of the RFC with regards to Claimant's CTS.

**B.     The ALJ erred in his discussion of the opinion evidence.**

Claimant contends that the ALJ erred in failing to consider the medical opinion of Dr. Assad Meymandi issued on February 20, 2013 and that the ALJ improperly weighed the opinion of Patricia Rickenbaker, a licensed clinical social worker ("LCSW"). Pl.'s Mem. [DE-27] at 13–16. Defendant responds that Claimant was previously found disabled with an onset date of February 13, 2013, so the time period at issue before the court is from September 2008 to February 13, 2013, and Dr. Meymandi's opinion falls outside of the relevant timeframe. Def.'s Mem. [DE-31] at 12–15. Defendant also contends that the ALJ adequately addressed Claimant's mental impairments despite the omission of Dr. Meymandi's opinion. *Id.*

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c).[3] In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of

---

[3] The rules for evaluating opinion evidence for claims filed after March 27, 2017 are found in 20 C.F.R. §§ 404.1520c, 416.920c, but 20 C.F.R. §§ 404.1527, 416.927 still apply in this case.

treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

### 1. Dr. Meymandi's Opinion

Dr. Meymandi's opinion was issued outside of the relevant timeframe, but it is nonetheless relevant. Moreover, the Appeals Council directed ALJ Miller to consider additional evidence submitted as part of Claimant's subsequent application, and the opinion of Dr. Maymandi, who

11

evaluated Claimant less than three weeks after the alleged onset date of his subsequent application, is included in the timeframe of the additional evidence the Appeals Council instructed ALJ Miller to consider. (R. 1907, 2351). Additionally, Dr. Meymandi diagnosed Claimant with mild mental retardation. (R. 2354). That condition can be lifelong. *Luckey v. U.S. Dept. of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989). Even though Dr. Meymandi evaluated Claimant outside of the time period at issue here, his opinion speaks to an impairment Claimant may have had during the relevant timeframe, and is therefore relevant.

Because Dr. Meymandi's medical opinion was relevant and part of the case record, the ALJ's failure to consider it is error. *See Cunningham v. Berryhill*, No. 5:17-CV-301-FL, 2018 WL 6731380, at *4 (E.D.N.C. Nov. 19, 2018) (holding that the ALJ erred in failing to consider a medical opinion even though the opinion was issued six months prior to the alleged onset date), *adopted by* 2018 WL 6729784 (E.D.N.C. Dec. 21, 2018). Failure to consider a medical opinion requires remand in most cases. *Love-Moore*, 2013 WL 5350870, at *2; *see also* 20 C.F.R. §§ 404.1527, 416.927 ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive"); *Hines v. Barnhart*, 453 F.3d at 559, 563 ("The ALJ was obligated to evaluate and weigh medical opinions"). Here, the ALJ's failure to consider Dr. Meymandi's opinion was not harmless error. The ALJ noted Claimant's low test scores, summarized his mental health treatment in 2010, noted that he was in special education classes, and ultimately found that Claimant's cognitive disorder was a severe impairment. (R. 1795–1803). However, Dr. Meymandi diagnosed Claimant with mild mental retardation, which is a condition that could meet a Listing. 20 C.F.R. § 404, subpt. P, app. 1, § 12.05. If the ALJ had considered Dr. Meymandi's opinion, he may have concluded that Claimant's cognitive disorder is severe enough to satisfy Listing 12.05. *Id.*; *see also Boyette v.*

*Berryhill*, No. 7:17-CV-159-FL, 2018 WL 4689451, at *3 (E.D.N.C. Sept. 28, 2018) (finding that an extensive review of medical evidence was not a substitute for evaluating a medical opinion and that the ALJ's failure to weigh a medical opinion that presented a possible conflict with the RFC was prejudicial error). Accordingly, the ALJ's failure to consider the opinion is not harmless, and it warrants remand.

### 2. Ms. Rickenbaker's opinion

Claimant contends that the ALJ erred in giving little and/or no weight to Ms. Rickenbaker's opinion. In December 2010, Ms. Rickenbaker opined that because of Claimant's cognitive impairments, he "was unable to perform in workforce settings, except perhaps with manual labor," and "because of the claimant's medical issues, working as manual labor [sic] did not seem possible." (R. 1805). The ALJ explained:

> As a therapist, Ms. Rickenbaker is not an acceptable medical source and this opinion, standing alone, cannot constitute documentation of severe or disabling vocational limitations. This report, however, has been considered with respect to severity and effect on function. (Social Security Ruling 06-3p). However, Ms. Rickenbaker's opinion has been assessed and as to the claimant only being able to work manual labor due to his school background and poor testing results, this opinion has been given little weight. In her opinion, Ms. Rickenbacker failed to mention the claimant's depressive or anxiety disorder, but relied only on the claimant's school background and poor testing to reach her conclusion. Further, Ms. Rickenbaker's assessment that the claimant is unable to perform manual labor jobs has been given no weight, as Ms. Rickenbaker is not a medical physician, and her opinion is based solely on the claimant's subjective complaints of physical impairments during his therapy sessions, not based or supported on any objective medical evidence.

*Id.* The ALJ was correct in stating that Ms. Rickenbaker, as a LCSW, is not an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (listing acceptable medical sources); *Taylor v. Astrue*, 494 F. App'x 895, 897 (10th Cir. 2012) (holding that a licensed professional counselor is not an acceptable medical source). Therefore, Ms. Rickenbaker's opinion could not constitute

13

evidence to establish an impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a).

However, the ALJ's explanations for why he gave the opinion little and/or no weight are lacking. First, the ALJ stated that he gave light weight to Ms. Rickenbaker's opinion that Claimant cannot function in the workplace, except for performing manual labor, because Ms. Rickenbaker "failed to mention the claimant's depressive or anxiety disorder, but relied only on the claimant's school background and poor testing to reach her conclusion." (R. 1805). However, Ms. Rickenbaker clearly states in her opinion that Claimant "has Dx Major Depression" and that he "has had several bouts of depression with suicidal ideations." (R. 1328). The ALJ was incorrect to state that Ms. Rickenbacker failed to mention Claimant's depression. Moreover, Ms. Rickenbacker relied on objective testing, Claimant's depressive disorder, her observations, and his educational history. (R. 1328–1329). The ALJ should have provided more explanation as to why he gave her opinion little weight.

Second, the ALJ explained that he gave no weight to Ms. Rickenbaker's opinion that Claimant cannot perform manual labor because Ms. Rickenbaker "is not a medical physician, and her opinion is based solely on the claimant's subjective complaints of physical impairments during his therapy sessions, not based or supported on any objective medical evidence." (R. 1805). However, Ms. Rickenbaker considered more than Claimant's subjective complaints; she conducted standard cognitive tests and reviewed his medical and educational history. (R. 1328–29). Accordingly, more explanation from the ALJ as to why he gave Ms. Rickenbaker's opinion no weight is required.

**C.      Claimant waived his Appointments Clause argument by failing to raise it below.**

Claimant contends that remand is appropriate because the ALJ's appointment did not comply with the Appointments Clause. Pl.'s Mem. [DE-27] at 17–19; Pl.'s Resp. [DE-32] at 2–9.

14

The Commissioner contends Claimant's failure to challenge the ALJ's appointment during the administrative proceeding before the agency forfeited any Appointment Clause claim. Def.'s Mem. [DE-31] at 16–25.

In *Lucia v. Sec. & Exch. Comm'n*, the Supreme Court considered whether ALJs within the Securities and Exchange Commission ("SEC") were "Officers of the United States" and subject to the Appointments Clause, which requires appointment of such officers by only the President, a court of law, or a head of department. — U.S. —, 138 S. Ct. 2044, 2051 (2018) (citing Const. art. II, § 2, cl. 2). The Court decided that the ALJ was, in fact, an "officer" and that his appointment was unconstitutional because it was made by an SEC staff member rather than one of the constitutionally permissible entities. *Id.* at 2055. Finally, the court concluded that because Lucia made a timely challenge to the validity of the ALJ's appointment before the SEC and in subsequent litigation, he was entitled to a new hearing before a properly appointed official. *Id.* ("'[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief.") (quoting *Ryder v. United States*, 515 U.S. 177, 182–83 (1995)).

Here, there is no evidence in the record that Claimant challenged the ALJ's appointment in the administrative proceeding before the SSA. Claimant raised this issue for the first time before the court, and, therefore, his challenge is untimely. *See Lucia*, 138 S. Ct. at 2055 (finding Lucia's challenge was timely because he challenged the ALJ's appointment before the SEC and continued to pursue his claim in court). Courts having considered post-*Lucia* Appointment Clause challenges to Social Security ALJ appointments "have unanimously rejected attacks on the validity of the ALJ's appointment under *Lucia* if claimant failed to make a constitutional challenge at the administrative level before the ALJ or the Appeals Council." *Nickum v. Berryhill*, No. 17-2011-

15

SAC, 2018 WL 6436091, at *6 (D. Kan. Dec. 7, 2018) (collecting cases); *see also Abbington v. Berryhill*, No. CV 1:17-00552-N, 2018 WL 6571208, at *2 (S.D. Ala. Dec. 13, 2018) ("In addressing Appointment Clause challenges to Social Security ALJs since *Lucia* was decided, numerous district courts have held that a claimant forfeits such a challenge by failing to raise it at the administrative level.") (collecting cases). Claimant's failure to timely challenge the ALJ's appointment before the SSA is a bar to this court's review of the issue on appeal from the Commissioner's decision. *See Weatherman v. Berryhill*, No. 5:18-CV-00045-MOC, 2018 WL 6492957, at *4 (W.D.N.C. Dec. 10, 2018) (finding post-*Lucia* challenge to appointment of Social Security ALJ "not to be cognizable on appeal as plaintiff did not first raise it before the Commissioner administratively"); *Britt v. Berryhill*, No. 1:18-CV-00030-FDW, 2018 WL 6268211, at *2 (W.D.N.C. Nov. 30, 2018) (denying motion to remand under *Lucia* on the grounds that the ALJ and the Administrative Appeals Judge presiding over his claim were not constitutionally appointed because the claimant "forfeited the issue by failing to raise it during his administrative proceedings.") (citing *Garrison v. Berryhill*, No. 1:17-cv-00302-FDW, 2018 WL 4924554 (W.D.N.C. Oct. 10, 2018); *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended) (holding that the plaintiff forfeits issues not raised before the ALJ or Appeals Council)). Accordingly, Claimant has waived any challenge to the ALJ's appointment by failing to raise it below.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-26] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-30] is DENIED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this Order.

So ordered, the 20th day of February, 2019.

Robert B. Jones, Jr.
United States Magistrate Judge